UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT ROBERT MACKEY,<br><br>   Plaintiff,<br><br> v.<br><br>SGT. BAKER, et al.,<br><br>   Defendants. | Case No. 22-cv-05105-JSC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STRIKE**<br><br>ECF Nos. 69, 68 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding without attorney representation, filed this civil rights case under 42 U.S.C. ' 1983 against officials at San Quentin State Prison ("San Quentin"). Following review of the first amended complaint (ECF No. 12) under 28 U.S.C. § 1915A and ruling on the motions to dismiss (ECF Nos. 24, 33), one claim remains against Defendant Correctional Counselor Della Baker for violating his right to due process.[1] (ECF Nos. 19, 27, 43.) Defendant Della Baker (hereinafter "Defendant" unless otherwise specified) filed a motion for summary judgment. (ECF No. 59.) Plaintiff filed an opposition, and Defendant filed a reply. (ECF Nos. 65, 66.) Plaintiff filed a sur-reply, which Defendant moves to strike. (ECF Nos. 67, 68.)

For the reasons discussed below, Defendant's motion for summary judgment is GRANTED. The Court has reviewed Plaintiff's sur-reply, and it does not alter the Court's analysis or conclusion. Defendant's motion to strike the sur-reply is DENIED as unnecessary.

## BACKGROUND

Plaintiff claims Defendant violated his right to due process by placing and failing to

---

[1] The Court uses Della Baker's first name to clearly distinguish her from Defendant Sergeant Baker (against whom the claims have been dismissed).

1  remove false information in his central file ("C-File") indicating he had prior convictions for first-
2  degree robbery and kidnap for ransom, and he alleges he was denied parole in part because of this
3  information.  (ECF No. 12 at 2-3.)
4         The parties do not dispute the following facts, unless otherwise noted.
5         Plaintiff is currently serving a sentence of 30 years-to-life under California's "Three
6  Strikes" law for a 1999 conviction of first-degree burglary.  (ECF No. 59-6 at 8-9.)  In 1990, he
7  was arrested and charged with a number of offenses, including kidnapping and first-degree
8  robbery, and he was convicted of first-degree robbery but not kidnapping.[2]  (ECF No. 59-6 at 9-
9  10; ECF No. 59-3 at 1-4.)
10        In 2015, Defendant completed a "Mentally Disordered Offender" ("MDO") form for
11 Plaintiff.  (ECF No. 59-11 at 11.)  The MDO form is used when an inmate nears their release date,
12 had mental health treatment within the past 90 days, and is incarcerated for a violent offense.
13 (ECF No. 59-8 at ¶¶ 7-8.)  The form refers such an inmate for a mental health evaluation to
14 determine whether they will be assigned to a state hospital for mental health treatment before they
15 are integrated back into the community.  (ECF No. 59-8 at ¶¶ 7, 9.)  Defendant should not have
16 completed an MDO form for Plaintiff because he is serving a life sentence and does not have a
17 release date.  (ECF No, 59-1 at ¶¶ 7-8; ECF No. 59-8 at ¶¶ 10-11.)  In the section of the MDO
18 form for "qualifying offenses," Defendant indicated, incorrectly, that in 1984 Plaintiff was
19 "convicted" of "Attempted Kidnap/Ransom" and "Robbery 1st."  (ECF No. 59-11 at 11.)  In her
20 declaration, Defendant states she had begun working at San Quentin in 2014, and due to her
21 "training at the time," she erroneously believed an MDO form was required for all inmates and
22 that had to include an inmate's *charges*, not just convictions.  (ECF No. 59-1 at ¶¶ 8-9; *see also id.*
23 at ¶ 13 (citing "human error").)[3]
24        The "criminal history" records in Plaintiff's central prison file ("C-File") indicate in 1990

---

[2] Plaintiff's "RAP" sheet shows he was also convicted of burglary, false imprisonment, two counts of vehicle theft, and robbery with a prior prison term, and he received a sentence of 136 months. (ECF No. 59-6 at 9-10.)

[3] Defendant does not explain in her declaration why she entered 1984 (instead of 1990) the year of his robbery conviction and kidnapping charge.  (*See* ECF No. 59-1.)

he was convicted of first-degree robbery, and these records do not include a kidnapping conviction. (ECF Nos. 59-2 at 1:26-27; 59-3 at 1-4.) Defendant states that as a correctional counselor, she did not have power to enter convictions into the "criminal records in Plaintiff's central file," and "[a]ny information in an inmate's central file regarding the inmate's criminal history came from the criminal case's abstract of judgment, court records, or police reports" and "those records came straight from the courts and were placed in inmates' central files." (ECF No. 59-1 at ¶ 5.) The MDO form is the only document in Plaintiff's files containing the inaccurate kidnapping conviction and the inaccurate date of his robbery conviction. (ECF No. 59 at 8:23-34; ECF No. 59-15 at 40:6-12.)

Plaintiff was denied parole at his first parole hearing in 2021. (ECF No. 59-4.) Prior to the hearing, a forensic psychologist conducted a "comprehensive risk assessment" of Plaintiff, and concluded he presented a "high risk of violence" due to his pre-incarceration history of supporting his drug addiction with criminal behavior of increasing "intensity and severity" and the fact that he had recently used marijuana in prison.[4] (ECF No. 59-7 at 11-12.) The report stated Plaintiff's criminal history began in 1985, and he had convictions for burglary, two counts of battery, assault with a deadly weapon, possession of a controlled substance, and, in 1990, five counts of first-degree burglary, three counts of first-degree robbery, false imprisonment, and two counts of auto theft. (*Id.* at 4-5.) The report referred to kidnapping on two occasions: it stated Plaintiff "did acknowledge kidnapping and tying up a victim before ransacking the victim's residence for valuable items," and it described his 1990 crime spree as occurring over five days and

> involving a burglary at an apartment complex (stole property valued at $1560), a second burglary at the same residence, kidnapping a male victim, demanding his money and keys, taking him back to his apartment and tying him up and then ransacking the residence (inmate was the aggressor and he was armed with a knife), and robbing two different victims at knifepoint on two occasions.

(*Id.*) The report did not state Plaintiff had a conviction for kidnapping or a robbery conviction from 1984. (*Id.*)

At the parole hearing, Plaintiff's criminal history was discussed at length (ECF No. 59-4 at

---

[4] Plaintiff used marijuana in prison in 2016 and 2021. (ECF No. 59-4 at 113.)

3

35-60), and included the following exchange regarding his 1990 crimes:

> **Presiding Commissioner Barton**: [Y]ou knocked [the victim] to the ground, beat him up, tied him up, right? Took him back to the apartment.
> **Inmate Mackey**: Yes.

(*Id.* at 52-53.) The parole board denied parole because of Plaintiff's parole history,[5] prior crimes of violence, the fact that these crimes supported his drug addiction, his lack of insight into both his "criminal thinking" and drug addiction, and the risk of relapse of drug use and criminal behavior if released. (*Id.* at 111-123.)

Neither the risk assessment report nor the transcript of the parole hearing mentions the MDO. (*See* ECF Nos. 59-4, 59-7.)[6]

## DISCUSSION

I.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

---

[5] Prior to his present incarceration, Plaintiff violated supervised release. (ECF No. 59-4 at 60.)
[6] The parole board stated it considered Plaintiff's "Central File and Comprehensive Risk Assessment, additional documents, and from this hearing, the testimony of Mr. Mackey, the statements of his counsel, and the statements of the prosecutor." (ECF No. 59-4 at 110.)

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 570 U.S. 650, 656-57 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

II. Analysis

Plaintiff claims Defendant's inaccuracies regarding his prior convictions on the MDO form violated his right to due process insofar as they caused him to be denied parole. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest "may arise from the Constitution itself ... or it may arise from an expectation or interest created by state laws or policies." *Id.* "An interest in avoiding certain conditions of confinement 'will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted)). "Though there is no single standard for determining when circumstances are atypical and significant, we have detailed three guiding considerations:

> 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (internal quotation marks and citations omitted).

A. Motion to Dismiss

In denying Defendant's motion to dismiss, the Court analyzed Plaintiff's claim as follows:

> Plaintiff alleges Della Baker placed and failed to remove false information in his "C-File" indicating he had prior convictions

for first-degree robbery and kidnap for ransom, and he alleges this information damaged his chance at release on parole, which was denied. (ECF No. 12 at 2-3.) For purposes of Section 1915 review, the Court concluded these allegations, when liberally construed, sufficient to state a claim for the denial of his right to due process. (ECF No. 11 at 3; ECF No. 19 at 2.) Della Baker moves to dismiss on the grounds Plaintiff's allegations do not plausibly support an inference she violated his right to due process.

In *Burnsworth v. Gunderson*, 179 F.3d 771 (9th Cir. 1999), the district court ordered expungement of the plaintiff inmate's prison disciplinary conviction after finding no evidence supported the conviction. After noting that expungement would be improper if the defendants had not violated the plaintiff's rights, the Ninth Circuit held the defendants violated the plaintiff's procedural due process rights by convicting him of escape following a hearing at which no "evidence of the inmate's guilt is presented." *Id.* at 774 (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) ("revocation of time [credits] does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record")). The court held the inmate's due process rights were violated "even if plaintiff has demonstrated no cognizable liberty interest." *Id.* at 775. Here, drawing all reasonable inferences from the allegations in Plaintiff's favor, Della Baker entered into Plaintiff's C-File criminal convictions for robbery and kidnap for ransom even though Plaintiff never sustained such convictions. (ECF No. 12 at 2.) Placing convictions in Plaintiff's record that do not exist is tantamount to prison officials putting a disciplinary conviction in his record following a disciplinary hearing at which no evidence supported the conviction, as the prison officials did in *Burnsworth*. In both instances, prison officials attributed convictions to an inmate based upon no evidence. And in both cases, prison officials thereby caused the harmful consequences of a conviction (in Plaintiff's case *two criminal* convictions) on an inmate's record. Under *Burnsworth*, prison officials violate an inmate's right to due process when they do so.

Defendant argues *Burnsworth* does not apply because it involved a conviction found at a disciplinary hearing.[7] (ECF No. 34 at 8 (citing *Burnsworth*, 179 F.3d at 775 (prison officials' actions "violated the fundamental principle of due process in prison discipline hearings.")). However, *Burnsworth* is not limited to the disciplinary hearing context. The court did not rely upon the fact that it was a disciplinary hearing, *see* 179 F.3d at 775 (citing cases providing that due process protections apply in clemency proceedings despite the lack of liberty interest in such proceedings), nor, as noted above, did it rely upon the existence of liberty interest arising from such hearings, *see id.* ("plaintiff's due process rights are violated even if plaintiff has demonstrated no cognizable liberty interest").[8] Assigning convictions to an inmate supported by no

---

[7] Plaintiff has not alleged there was any hearing or other process connected to Della Baker's entry of the convictions into Plaintiff's records.
[8] Indeed, the alleged actions by Della Baker may have afforded fewer protections than in the

6

evidence that he ever received them or that he ever committed the underlying offenses, as Della Baker allegedly did, violates a "fundamental principle of due process" under *Burnsworth*, *id.*, regardless of whether prison officials did so following a disciplinary hearing. To put it another way, under Defendant's argument, if the *Burnsworth* officials merely placed a disciplinary conviction that never occurred in the inmate's file there would be no due process violation, but if they held a hearing at which no evidence was presented and then found the inmate guilty there would be a violation. At this early stage in the proceeding, Defendant has not persuaded the Court Ninth Circuit law makes that distinction.

Defendant's reliance on *Slaughter v. Cate*, No. 12-cv-03872-VC, 2014 WL 5474025 (N.D. Cal. Oct. 28, 2014), to support its 12(b)(6) motion is unpersuasive. There the court granted summary judgment to defendants on the grounds the inmate had no due process liberty interest in "the verification or expungement of allegedly false information in his prison file." *Id.* at *5-6. *Slaughter* is readily distinguishable because there, unlike here and in *Burnsworth*, the allegedly false information was not created by prison officials, but was instead in a probation report. Further, prison officials had added corrective letters to the inmate's file, and the inmate had a hearing to review the accuracy of the information in his file. *See id.* at *1-3. Moreover, *Slaughter* relied on *Paul v. Davis*, 424 U.S. 693 (1976), *see* 2014 WL 5474025 at *5, which involved a police department's defamation of private individuals, not an inmate's procedural due process protection against prison officials placing non-existent convictions in an inmate's file. And finally, *Slaughter* was decided on summary judgment on a full evidentiary record.

Defendant next argues Plaintiff's allegations are insufficient because "the possibility of denial of parole at some later date does not amount to the denial of a liberty interest." *See Burnsworth*, 179 F.3d at 774 n.3. But, unlike the allegations against Teixeira, Della Baker's alleged actions took place *before* Plaintiff was denied parole, that is, in 2015 (ECF No 12 at 2), and therefore his amended complaint can be construed as alleging her actions, in part, caused an actual parole denial, not merely a possible one.

(ECF No. 43 at 7:13-9:13 (footnotes renumbered from original).)

B. Due Process Analysis

The parties do not dispute Defendant committed errors in completing the MDO form in two respects. First, contrary to what the form described, Plaintiff had a kidnapping charge but not a conviction, and his robbery conviction was from 1990, not 1984. (*See* ECF No. 59-6 at 9-10; ECF No. 59-3 at 1-4.) Second, she should not have completed such a form because, as an inmate serving a life term, Plaintiff did not qualify for an MDO referral. (*See* ECF No. 59-8 at ¶¶ 7-8; 59-

context of a disciplinary hearing if indeed her actions were not pursuant to any hearing.

7

1 at ¶ 8.)  Plaintiff asserts his due process rights were violated because Defendant's errors on the MDO form caused him to be denied parole.

No reasonable trier of fact could find these errors violated Plaintiff's right to due process. In *Burnsworth*, the court described the "wrong suffered by plaintiff" from having the unsupported convictions in his records as stemming from the fact that he "should not have to explain away the conviction at any future proceeding, including future parole hearings." *Id.* at 773, 775.  Here, by contrast, no rational fact-finder could conclude Plaintiff faced a risk that he would have to explain the inaccurate convictions on his MDO form at a parole hearing or other proceeding.

It is undisputed Plaintiff's C-File has specific "criminal history" records based on state court records, and they do not include the convictions from the MDO form for kidnapping or for first-degree robbery from 1984, but instead accurately indicate he was convicted of robbery in 1990.  (*See* ECF Nos. 59-2 at 26-27; 59-3 at 2-4.)  It is also undisputed the purpose of the MDO form is to refer inmates for a mental health evaluation for possible placement in a state hospital when released, not to determine parole suitability, and that the form includes conviction information because the form only applies to inmates with "qualifying" commitment offenses.  (ECF Nos. 59-11 at 11; 59-8 at ¶¶ 7-9.)  And there is no evidence disputing Defendant's sworn statement that, as a correctional counselor, she had no power to enter convictions into or otherwise alter Plaintiff's criminal history records.  (ECF No. 59-1 at  5.)

Further, neither the parole hearing transcript or the risk assessment report make any reference to the MDO form, a kidnapping conviction, or a 1984 robbery conviction.  (ECF No. 59-4, 59-7; *see* also ECF No. 59-8 at ⁋ 15 (stating MDO form and its contents were not used in Plaintiff's parole determination or risk assessment).)  To the extent kidnapping was discussed, there was no discussion of a kidnapping *conviction*, but rather of Plaintiff engaging in conduct ---- tying up and moving a victim ---- that supported his undisputed 1990 kidnapping *charge*.  And, in that parole hearing discussion, Plaintiff admitted engaging in that conduct.  In light of this record, no rational fact-finder could determine from the evidence Plaintiff's 2021 parole denial was, or a future parole decision would be, influenced by the inclusion of the erroneous MDO form in his C-File.

8

1    There is also no evidence from which a rational trier of fact could conclude that Plaintiff
2    would have to address the MDO form or its contents at any "other proceeding." *Burnsworth*, 179
3    F.3d. at 773.  It is undisputed Plaintiff is not eligible for an MDO evaluation and thus did not and
4    will not even have an MDO mental health evaluation.
5    Finally, no evidence is in the record from which a rational fact-finder could conclude
6    Plaintiff has suffered any other consequence, let alone an adverse consequence, from the
7    erroneous MDO form.  There is no evidence prison officials relied upon it to segregate him, re-
8    classify him, or deprive him of any rights or privileges.  The Court is aware of no authority, and
9    Plaintiff presents none, that the mere existence of an inaccuracy in his records, particularly one
10   without any negative consequence, constitutes an "atypical and significant hardship" that amounts
11   to the violation of his right to due process.  *Ashker*, 81 F.4th at 887.  So, Defendant is entitled to
12   summary judgment on the due process claim arising from the erroneous MDO form.

### C. Labeling as a Gang Member

14   Plaintiff alleged in the amended complaint he was "labeled" a "Blood gang member from
15   Sacramento" without the "necessary 3-points of fact required by CDC Title 15."  (ECF No. 12 at
16   3.)  Because he did not allege Defendant played any role in this labeling, the Court did not identify
17   it as a cognizable claim against Defendant.  (*See id.*; ECF No. 11 at 3:3-6; ECF No. 19 at 2:17-21.)
18   Nevertheless, Defendant addresses this issue in her summary judgment motion, arguing she did
19   not prepare any of the records referring to a gang affiliation for Plaintiff (which records were
20   prepared at a different prison where she did not work), and states in her declaration she had no
21   authority to validate an inmate as a gang member.  (ECF No. 59-1 at ¶ 4; ECF No. 59-12 at 7; 59-
22   14 at 3, 6-9.)  Plaintiff presents no evidence supporting a finding Defendant was involved in any
23   mis-labeling of him as a gang member.  Consequently, there is no triable issue as to whether
24   Defendant violated his right to due process by labeling him as a gang member.

### D. Correction of MDO Form via Administrative Grievance

26   The Court notes Defendant invites Plaintiff to seek correction of the MDO form by filing
27   an administrative grievance.  (ECF No. 43 at 17:1-6.)  Plaintiff filed an administrative grievance
28   regarding this issue in 2020 in which he complained, "I saw in my file that I have a kidnap/ransom

from 1984" and asserted, "This is completely untrue." (ECF No. 59-11 at 10.) The response to this grievance characterizes his claim as asserting his records inaccurately showed he is "serving a term for Kidnaping for Ransom." (*Id.* at 9.) The grievance was denied because his file had "no documentation indicating" he was "serving a term for a violent felony." (*Id.*) Plaintiff does not claim his file inaccurately reflects the offense for which he is "serving" a term, rather that it inaccurately reflects his *prior* convictions. Given Defendant's concession that the MDO form was created in error and is inaccurate (ECF No. at 20:9-10), and her invitation to seek its correction via a new administrative grievance, prison officials may decide to correct or expunge the MDO form on their own accord or, if not, in response to a new administrative grievance in which Plaintiff specifically requests the *MDO form* be expunged or corrected.

## CONCLUSION

For the reasons discussed above, Defendant Della Baker's motion for summary judgment is GRANTED and motion to strike is DENIED.

The Clerk shall enter judgment and close the file.

This order terminates docket numbers 67 and 68.

**IT IS SO ORDERED.**

Dated: March 4, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge